IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

CAROL OBERLY

       Plaintiff,

v.

WING ENTERPRISES, INC. d/b/a LITTLE GIANT SOLUTIONS and HOME DEPOT U.S.A., INC. d/b/a THE HOME DEPOT

       Defendants

_____

## COMPLAINT AND JURY DEMAND

Plaintiff, by and through her attorneys, Chalat Hatten Koupal & Banker PC, alleges:

### JURISDICTION

1. Plaintiff CAROL OBERLY (Mrs. Oberly) is a resident of the State of Colorado.

2. The defendant WING ENTERPRISES, INC. d/b/a LITTLE GIANT SOLUTIONS (hereinafter: Wing Enterprises) is a Utah corporation, and has its principal place of business in Springville, Utah.

3. Defendant HOME DEPOT, U.S.A., INC., d/b/a THE HOME DEPOT (hereinafter: The Home Depot) is incorporated in the State of Delaware, and has its principal place of business in Atlanta, Georgia.

4. There is complete diversity of citizenship as between the parties.

5. As a proximate result of the incident underlying this case, Mrs. Oberly has and will sustain significant economic and noneconomic damages. Taking into account the nature, extent, and

1

permanency of the injuries sustained, and the reasonable actual, general, economic and non-economic damages sustained by Mrs. Oberly, it is the opinion and experience of undersigned counsel that the value of the case exceeds the jurisdictional threshold value of $75,000.00, exclusive of interest and costs.  This Court therefore has original diversity jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a)(1).

6. Alternatively, jurisdiction is proper pursuant to 28 U.S.C. § 1331 as the case alleges federal claims under the Magnuson-Moss Act, 15 U.S.C.A. § 2301, *et seq.*

## FACTUAL ALLEGATIONS

7. On September 17, 2012, Mrs. Oberly purchased a "Little Giant" Stepladder/Stepstool Type 1A SKU#15124-002 and marked as # 10622S from the Home Depot store #1513 located at 2436 F Road Directions Grand Junction, CO 81505.

8. The "Little Giant Switch-it Stepladder/Stepstool" (herein, "the ladder") was designed by, manufactured by, marketed by, and labeled under trade names owned by defendant Wing Enterprises, Inc.  Wing Enterprises advertised that its ladders were the "strongest, safest, most versatile ladder in the world."

9. In the manufacturing process, the co-defendant Wing Enterprises contracted with Suzhou Zhongchuang Aluminium Products Co., Ltd., a Chinese corporation.  Wing Enterprises furnished the design specifications which resulted in the alleged defect in the ladder.  Wing Enterprises exercises significant control over the design, engineering, manufacturing, and quality control process of the ladder so as to be a manufacturer as defined by C.R.S. § 13-21-401(1).

10. Defendant Wing Enterprises is the "principal distributor or seller" of the ladder such that it is

a manufacturer as defined by C.R.S. § 13-21-402(2). It had primary authority and responsibility for the engineering design, material selection, testing, and quality control for the ladder in question.

11. The Home Depot is engaged in the home improvement business and the selling, distributing, marketing, and advertising of products, including ladders. The Home Depot, in cooperation with Wing Enterprises, had in the autumn of 2012 launched a marketing and sales campaign featuring the Little Giant line of ladders with specific focus on their ease of use and safety.

12. Upon information and belief, The Home Depot had a distribution and marketing agreement with the co-defendant Wing Enterprises. Wing Enterprises' "Little Giant Switch-it Stepladder/Stepstool" was offered and sold, under this agreement, exclusively at The Home Depot stores, nationwide. The specific ladder in question was sold on September 17, 2012 directly to the plaintiff at the Grand Junction, Colorado, The Home Depot store.

13. The Home Depot ads featured a woman using the Little Giant 6' Stepladder/Stepstool and noted that the ladder was the "lightest" step ladder on the market, and was the "most safe" [*sic*] ladder marketed. Mrs. Oberly, relying specifically on the safety representations made in the advertising campaign and on the reputation and presence of The Home Depot advertising and trade dress, purchased the ladder.

14. On November 3, 2012, Mrs. Oberly was using the ladder to paint a bathroom in her home. At the time of the incident in question, the ladder was extended to its 6' length. Mrs. Oberly had setup the ladder in accord with the express instructions and directions provided by the co-defendants. After stepping onto the ladder, the ladder collapsed. As a result, Mrs. Oberly fell. She sustained injuries, damages, and losses as set out below. Upon information and

belief, one or more of the ladder's inner rails disengaged from the outer section due to a design, manufacturing, or assembly defect. This caused the ladder to suddenly become unstable and Mrs. Oberly to fall.

15. On December 11, 2012 the defendant Wing Enterprises recalled, acting under the auspices and through the United States Consumer Products Safety Commission, "Little Giant" Stepladder/Stepstool identified as Part #15124-002 and date stamped, among others, 10622S. Mrs. Oberly's ladder was among the ladders subject to recall. The recall was for precisely the hazard which caused Mrs. Oberly's fall and injuries.

16. Plaintiff and undersigned counsel know of no informal dispute settlement procedure which would bar this filing.  15 U.S.C.A. § 2310

**FIRST STATEMENT OF CLAIMS FOR RELIEF**
(Product liability – Strict Liability and Negligence – defendant Wing)

17. All preceding allegations contained in this Complaint are incorporated herein by reference.

18. At all times herein mentioned, defendant Wing Enterprises was engaged in the business and profession of designing, manufacturing, selling, distributing, fabricating, assembling, inspecting, testing, servicing, repairing, marketing, warranting and advertising ladders which defendant Wing Enterprises knew, or, in the exercise of reasonable care, should have known would be used without inspection for defects or dangers in their parts, mechanisms or design.

19. The ladder manufactured by defendant Wing Enterprises was unreasonably dangerous and defective for use because, among other reasons, when extended, the ladder inner section can disengage from the outer section causing the user to fall.

20. The defendant Wing Enterprises knew or, in the exercise of reasonable care, should have known that the ladder purchased by Mrs. Oberly would be used without a consumer's inspection for defects or dangers in manufacture or design.

21. Defendant Wing Enterprises manufactured the ladder which was sold to plaintiff without adequate warning as to the propensity of the ladder's inner section to disengage from the outer section, causing the user to fall and cause severe bodily injury.

22. At all times herein mentioned, the defendant Wing Enterprises negligently and carelessly designed, engineered, manufactured, controlled quality, sold, distributed, installed, fabricated, assembled, bought, inspected, altered, maintained, serviced, tested, repaired, marketed, warranted, and advertised their unreasonably dangerous and defective ladders. The ladder rails had a propensity to disengage and collapse while the ladder was in use. The collapse was capable of causing, and in fact did cause, personal injuries to persons while being used in a manner reasonably foreseeable, thereby rendering the product unsafe and dangerous for use in its intended manner.

23. Mrs. Oberly was one of those persons that defendant Wing Enterprises should have reasonably expected to use the ladder.

24. Mrs. Oberly's injuries, as set out in detail below, were caused by her use of the ladder in a manner that the defendant Wing Enterprises should have reasonably expected.

25. As a direct and proximate result of the negligence of defendant Wing Enterprises, and the manufacturing defects of the ladder in question, the plaintiff sustained injuries, damages, and losses as set out below. The defendant Wing Enterprises is strictly liable to the plaintiff for such injuries, damages and losses as provided for under C.R.S. 13-21-401, *et seq.*

**SECOND STATEMENT OF CLAIMS FOR RELIEF**

(Breach of Warranties/Magnuson-Moss Warranty Act claims – both defendants)

26. All preceding allegations contained in this Complaint are incorporated herein by reference.

27. Mrs. Oberly was, with respect to the purchase of the ladder in question, a consumer under the definitions of the Magnuson-Moss Act. 15 U.S.C. §2301(3).

28. Both defendants are "suppliers" of goods generally, and specifically were the sellers of the particular ladder purchased by Mrs. Oberly. 15 U.S.C. §2301(4)

29. Both defendants were also merchants within the meaning of C.R.S. § 4-2-104 and "warrantors" pursuant to 15 U.S.C. §2301(5)

30. Both defendants expressly or impliedly warranted that goods sold, specifically the ladder at issue, shall be merchantable pursuant to C.R.S. § 4-2-314. The implied warranty of merchantability cannot be disclaimed. 15 U.S.C.A. § 2308.

31. Both defendants knew of the purpose for which the ladder was required, specifically for use as a home improvement tool for a person to gain access to heights up to an additional six feet. Ms. Oberly relied upon the defendants' skill and/or judgment to select or furnish suitable goods for the purpose of gaining access to heights up to an additional six feet. The defendants expressly or impliedly warranted that goods sold, specifically the ladder at issue, shall be fit and safe for the purpose of gaining access to heights up to an additional six feet. The implied warranty of fitness for a particular purpose could not be disclaimed. 15 U.S.C.A. § 2308

32. The ladder was, in fact, neither merchantable as defined at C.R.S. § 4-2-314, nor fit for the purpose of use as a ladder because when extended, the ladder's inner rail section can

disengage from the outer section causing the ladder to become unstable and the consumer/user to fall.

33. Proper notices of Mrs. Oberly's breach of warranty claims have been served on both defendants.

34. As a direct and proximate result of defendant the defenants' breach of their warranties of merchantability and fitness for a particular purpose, plaintiff suffered injuries, damages, and losses as set out below.

## DAMAGES

35. As a result of the ladder collapse, Mrs. Oberly fell.  As a direct result of her fall she sustained a left bicondylar tibial plateau periprosthetic (prior total knee replacement) fracture on November 3, 2012.

36. Additionally, Mrs. Oberly sustained a right hip subtrochanteric and intertrochanteric femur fracture – a complex proximal femoral fracture.  The hip fracture was first repaired emergently with a cephalomedullary nail fixation on November 3, 2012; that fix failed and was revised with an open reduction, internal fixation with hardware on November 26, 2012.

37. Mrs. Oberly has endured an extended hospitalization, then rehabilitation, and is now limited in her mobility as she requires a walker.

38. Mrs. Oberly has been widowed since 2003. Previous to November 3, 2012, Mrs. Oberly was independent, healthy, and she owned, maintained, cleaned, improved, and gardened at, her own home.  Mrs. Oberly was born in 1939.  Prior to the incident, she was an active and energetic senior prior to the incident, and has longevity in her family.

39. Mrs. Oberly has and will suffer past and future economic losses for medical and

rehabilitation expenses, including: emergency room services, ambulance services, hospital charges, special air charges, physician services, surgical costs, nursing charges, prescriptions, transportation expenses, costs for assistive devices, and physical therapy expenses. Mrs. Oberly is at risk for future medical complications and additional economic damages relating to future surgical treatment associated with these injuries. Mrs. Oberly has and will suffer other economic losses.

40. Mrs. Oberly has and will suffer losses for temporary and permanent physical impairment, temporary and permanent disfigurement, loss of enjoyment of life, and pain and suffering.

WHEREFORE, Plaintiff prays for judgment in her favor and against defendants for damages in an amount to be determined at trial, interest from the date of the injury: November 26, 2012, costs and expenses of suit and attorneys' fees pursuant to 15 U.S.C. § 2310(d)(2), and such other relief as the Court deems proper.

**PLAINTIFFS DEMAND A TRIAL BY JURY**

Respectfully submitted,

*s/ James H. Chalat*

_____

James H. Chalat
Linda J. Chalat
CHALAT HATTEN KOUPAL
 & BANKER PC
1900 Grant Street, Suite 1050
Denver, Colorado 80203
Telephone: (303) 861-1042
ATTORNEYS FOR PLAINTIFFS

Plaintiff's address:
3370 F5/8th Road
Clifton, CO  81520